UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUSSELL C. MAYNARD, | ) | Case No.12cv1435 AJB (JMA) |
| | ) | |
| Plaintiff, | ) | ORDER: |
| | ) | |
| v. | ) | |
| | ) | (1) GRANTING DEFENDANTS' |
| WELLS FARGO BANK, N.A.; | ) | MOTION TO DISMISS THE THIRD |
| FIDELITY NATIONAL TITLE | ) | AMENDED COMPLAINT WITH |
| INSURANCE COMPANY; and DOES | ) | PREJUDICE, (Doc. Nos. 44, 47); |
| 1 through 50, Inclusive, | ) | AND |
| | ) | |
| Defendants. | ) | (2) SETTING OSC HEARING ON |
| | ) | FEES AND COSTS |

Presently before the Court is Russell C. Maynard and Rose A. Maynard's (collectively, "Plaintiffs") Third Amended Complaint ("TAC").[1]  (Doc. No. 40.)  On May 14, 2013, Defendants Wells Fargo Bank, N.A. and ("Wells Fargo") and U.S. Bank, N.A. ("U.S. Bank") filed a joint motion to dismiss the TAC, (Doc. No. 44), and on May 16, 2013, Defendants Fidelity National Title Insurance Company ("Fidelity") and Default Resolution Network ("Default Resolution Network") (collectively, "Defendants") filed a joint motion to dismiss the TAC, (Doc. No. 47).[2]  The Court finds both motions suitable

---

[1] Plaintiffs erroneously labeled Docket Number 40 as the "Second Amended Complaint" when it should have been labeled the "Third Amended Compliant." Complaint, (Doc. No. 1), First Amended Complaint, (Doc. No. 16), Second Amended Complaint, (Doc. No. 33), and the Third Amended Complaint, (Doc. No. 40).

[2] Wells Fargo and U.S. Bank also requested judicial notice of two documents: (1) Notice of Trustee's (Exhibit 1); and (2) the Consent Judgment filed in the United States District Court for the District of Columbia (Exhibit 2).  (Doc. No. 5.)  The Court

for disposition on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  (Doc. No. 52.)  For the reasons set forth below, the Court GRANTS Defendants' motions to dismiss with prejudice.  (Doc. Nos. 44, 47.)  The Clerk of Court is instructed to enter judgment and close the case.

## BACKGROUND

**I.    Factual Background**

The factual allegations in the TAC remain largely unchanged from the allegations in the original complaint, the First Amended Complaint ("FAC"), and the Second Amended Complaint ("SAC").  On or about May 19, 2004, Plaintiffs executed a Deed of Trust ("DOT") in the amount of $265,000 to obtain a loan from Wells Fargo ("Loan").  (TAC ¶ 21, Ex. A, Deed of Trust.)  The DOT listed Wells Fargo as the Lender, Fidelity as the Trustee, and Plaintiffs as the Borrower.  (TAC, Ex. A at 1-2.)  The Loan was secured by certain real property located at 10221 Trails End Circle, San Diego, California 92126 ("Property").  (TAC ¶¶ 5, 21.)  Thereafter, but sometime before August 5, 2011, Plaintiffs defaulted on the Loan.  (TAC, Ex. B.)  On August 5, 2011, Fidelity executed a Notice of Default ("Notice of Default") indicating that Plaintiffs were $18,750.07 in arrears on the Loan.  (TAC ¶ 29, Ex. B, Notice of Default.)  The Notice of Default was recorded in the San Diego County Recorder's Office on August 9, 2011, as Document No.: 2011-0404333.  (*Id.*)

On February 8, 2012, Wells Fargo assigned the DOT to U.S. Bank, as trustee and successor in interest to Wachovia, as trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2004-M (the "Assignment").  (TAC, Ex. D, Assignment.)  The Assignment stated that all beneficial interest in the DOT executed by Plaintiffs was granted, assigned, and transferred to U.S. Bank.  (*Id.*)  The Assignment was signed by Kathleen Everson (Everson"), Vice President of Loan

---

GRANTS the request because the documents are "not subject to reasonable dispute" and are either matters of public record or official court documents. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Documentation for Wells Fargo.  (*Id.*)  The Assignment was recorded in the San Diego County Recorder's Office on February 13, 2012, as Document No.: 2012-0082985.  (*Id.*)

On February 21, 2012, Fidelity executed a Notice of Trustee's Sale ("Notice of Trustee's Sale") indicating that the Property would be sold at public auction to the highest bidder if Plaintiffs failed to pay the deficient amount due and owing on the Loan. (Doc, No. 45, Defs.' RJN, Ex. 1.)  The Notice of Trustee's Sale was recorded in the San Diego Recorder's Office on February 24, 2012.  (*Id.*)  The trustee's sale was originally scheduled for March 15, 2012, but was postponed.  (*Id.*)  The Property has not yet been sold.  (Doc. No. 44 at 2:14-15.)

## II.    Procedural History

Plaintiff Russell C. Maynard filed the original complaint in San Diego Superior Court against Wells Fargo, U.S. Bank, and Fidelity on May 10, 2012.  (Doc. No. 1, Ex. A, State Court Complaint.)  Default Resolution Network was not listed as a named defendant.  Wells Fargo then removed the action to this Court on June 13, 2012.  (Doc. No. 1.)  The complaint alleged seven causes of action against Wells Fargo, U.S. Bank, and Fidelity, including: (1) violation of California Civil Code § 2923.5; (2) fraud; (3) intentional misrepresentation; (4) violation of California Civil Code 2923.6; (5) violation of California Civil Code § 1572; (6) violation of Business and Professions Code § 17200 ("UCL"); and (7) violation of the federal Truth in Lending Act ("TILA").  (Doc. No. 1, Ex. A.)

On October 15, 2012, the Court granted Wells Fargo and Fidelity's motion to dismiss the original complaint.  (Doc. Nos. 3, 11, 15.)  In doing so, the Court: (1) dismissed the entire complaint without prejudice for failure to join an indispensable party (Ms. Maynard); (2) dismissed without prejudice the second, third, fifth, and sixth causes of action for fraud, intentional misrepresentation, violation of California Civil Code § 1572, and violation of the UCL; and (3) dismissed with prejudice the first, fourth, and seventh causes of action for violation of California Civil Code §§ 2923.5 and 2923.6, and violation of TILA.  (Doc. No. 15 at 12-13.)

On November 13, 2012, Russell C. Maynard filed the FAC against Wells Fargo, U.S. Bank, Fidelity, and Default Resolution Network. (Doc. No. 16.) The FAC added Default Resolution Network as a named defendant, but did not join Ms. Maynard as a party-plaintiff as previously ordered by the Court. The FAC alleged six causes of action: (1) cancellation of instrument of corporate assignment and deed of trust; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) fraudulent concealment; (5) quiet title; and (6) declaratory relief. (*Id.*) Thereafter, Fidelity filed a motion to dismiss the FAC on December 11, 2012, (Doc. No. 18), and Wells Fargo and U.S. Bank filed a joint motion to dismiss the FAC on December 18, 2012, (Doc. No. 21). On February 14, 2013, Default Resolution Network filed a notice of joinder in Fidelity's motion to dismiss. (Doc. No. 31.)

On February 20, 2013, the Court dismissed the FAC and granted Russell C. Maynard limited leave to amend. (Doc. No. 32.) Specifically, Russell C. Maynard was instructed that any amended complaint must:

> (1) join his wife as a party-plaintiff; (2) set forth facts as to why tender is not required, especially as it relates to Plaintiff's claim for quiet title; (3) set forth facts as to how Plaintiff's claims for intentional misrepresentation, negligent misrepresentation, and fraudulent concealment meet the heightened pleading standard under Rule 9(b); and set forth facts that could plausibly support Plaintiff's argument that the foreclosure documents are void due to alleged "robo-signing."

(Doc. No. 32 at 7:5-18.) Russell C. Maynard was also instructed that any causes of action previously dismissed by the Court without leave to amend must not be re-alleged in an amended complaint, and that no new parties or claims may be added without leave of Court. (*Id.* at 7:19-8:10.)

On March 21, 2013, Russell and Rose Maynard filed the SAC against Wells Fargo and U.S. Bank. (Doc. No. 33.) Fidelity and Default Resolution Network were not listed as named defendants in the SAC. (*Id*.) Although specifically instructed that no new claims or parties (with the exception of Rose Maynard) may be added to an amended

complaint without leave of court, the SAC included seven new causes of action.[3]  On April 12, 2013, the Court *sua sponte* dismissed the SAC for failure to comply with the Court's previous order, (Doc. No. 32 at 8:3-10), and denied as moot Wells Fargo and U.S. Bank's motion to dismiss, (Doc. No. 35).  (Doc. No. 39.)  The April 12, 2013 Order also stated that failure to comply with the Court's order may warrant an order to show cause as to why sanctions should not be imposed against Plaintiffs to compensate Defendants for the time and expense incurred in opposing both the FAC and SAC.  (Doc. No. 39 at 3:4-7.)

On April 26, 2013, Plaintiffs filed the operative TAC against Wells Fargo, U.S. Bank, Fidelity, and Default Resolution Network.[4]  (Doc. No. 40).  The TAC alleges five causes of action, including: (1) declaratory relief; (2) violation of the UCL; (3) intentional misrepresentation; (4) fraudulent concealment; and (5) cancellation of deed of trust.  (*Id.*)

## LEGAL STANDARD

## I.      Motion to Dismiss under Rule 12(B)(6)

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss, the court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Courts are not however, "bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1949-50 (2009).

---

[3] The FAC contained six causes of action: (1) cancellation of instrument corporate assignment of deed of trust; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) fraudulent concealment; (5) quiet title; and (6) declaratory relief. (Doc. No. 16.)  In comparison, the SAC contained nine causes of action: (1) declaratory relief; (2) negligence; (3) quasi-contract; (4) violation of 15 U.S.C. § 1692 et seq.; (5) violation of 12 U.S.C. § 2605; (6) violation of California Business and Professions Code § 17200 et seq.; (7) accounting; (8) breach of contract; and (9) breach of the implied covenant of good faith and fair dealing.  (Doc. No. 33.)

[4] The TAC was mislabeled by Plaintiffs as the "Second Amended Complaint." This error was corrected by the Clerk of Court.

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007).  Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 664, 129 S. Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

Under Rule 12(b)(6), complaints alleging fraud must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Fed. R. Civ. P. 9(b).  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.  A pleading is sufficient under Rule 9(b) if it "state[s] the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Misc. Serv. Workers, Drivers & Helpers v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981) (citations omitted); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").  Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted).  Regardless of the title given to a particular claim, allegations grounded in fraud are subject to Rule 9(b)'s pleading requirements.  *See Vess*,

317 F.3d at 1103-04. Thus, even where fraud is not an essential element of a consumer protection claim, Rule 9(b) applies where a complaint "rel[ies] entirely on [a fraudulent course of conduct] as the bases of that claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1103-04).

## II.   Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule is intended to "facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, " 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' " *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). However, leave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## DISCUSSION

## I.   Fidelity and Default Resolution Network's Motion to Dismiss

Fidelity and Default Resolution Network move to dismiss the TAC on two grounds. First, Fidelity and Default Resolution Network contend the Court's April 12, 2013 order expressly stated, for the second time, that "no new parties or claims may be added without leave of Court." (Doc. No. 32 at 8:6-8; Doc. No. 39 at 3:1-4.) Therefore, because Plaintiffs did not name Fidelity or Default Resolution Network as defendants in the SAC, (Doc. No. 33), nor did Plaintiffs seek leave of Court to add Fidelity and Default

Resolution Network as defendants in the TAC, all claims alleged against Fidelity and Default Resolution Network should be dismissed.  Fidelity and Default Resolution Network also request an order requiring Plaintiffs to show cause as to why sanctions should not be imposed based on the Court's prior admonishments.  (Doc. No. 47 at 6.)  Second, Fidelity and Default Resolution Network contend that even if they are properly named as defendants in the TAC, all claims alleged against them should be dismissed for failure to state a claim under Rule 12(b)(6).

Resolution of this issue requires a brief review of the relevant procedural history of the case.  Plaintiffs named Wells Fargo, U.S. Bank, and Fidelity as named defendants in the original complaint.  Plaintiffs did not add Default Resolution Network as a named defendant until the FAC.  However, this addition does not trouble the Court because the addition of Default Resolution Network was prior to any Court admonishments regarding seeking leave of Court before adding new parties or claims.  The trouble occurs however, on March 21, 2013, when Plaintiffs filed the SAC omitting Fidelity and Default Resolution Network as named defendants.  Although Plaintiffs failed to state why these defendants were not named as defendants in the SAC, the Court can only infer that this was a voluntary or negligent act because the Court did not dismiss previously alleged claims against these defendants with prejudice.

Thereafter, and of crucial import to Fidelity and Default Resolution Network's first ground for dismissal, the Court's April 12, 2013 order *sua sponte* dismissing the SAC stated:

> Plaintiffs are granted one final opportunity to amend the SAC to comply with this order and the Court's prior order dismissing the FAC.  (Doc. No. 32.)  Thus, no new parties (besides Rose A. Maynard) or claims may be added without leave of Court.  Failure to comply with this order, or any other prior Court order, will warrant an order to show cause as to why sanction shall not be imposed against Plaintiffs to compensate Defendants for the fees and costs incurred in opposing the FAC and SAC.

(Doc. No. 39 at 3:1-7.)

Accordingly, based on the clear language of the Court's April 12, 2013 order, Plaintiffs were not permitted to add any new parties—except Rose A. Maynard—without first seeking leave of Court.  Therefore, because Plaintiffs did not seek leave of Court prior to adding Fidelity and Default Resolution Network as named defendants in the TAC, the Court finds dismissal of these defendants appropriate based on Plaintiffs' failure to comply with specific Court orders.  *See DeLeon et al. v. Wells Fargo Bank et al.*, 2010 U.S. Dist. LEXIS 112941, *8–9, 2010 WL 4285006 (N.D. Cal. Oct. 22, 2010) (finding that plaintiff was required to seek leave to amend to add new claims when prior dismissal specified only limited amendment had been granted).  Moreover, even if the Court found dismissal inappropriate on this ground, dismissal of Fidelity and Default Resolution Network would nonetheless be appropriate because Plaintiffs failed to file any opposition to Fidelity and Default Resolution's joint motion to dismiss.[5]  Therefore, pursuant to Civil Local Rule 7.1.e.2 and 7.1.f.3.c, the Court GRANTS Fidelity and Default Resolution Network's motion to dismiss the TAC as to all claims alleged against these defendants, without leave to amend, and orders Plaintiffs to show cause as to why sanctions should not be imposed.[6]

## II.   Wells Fargo and U.S. Bank's Motion to Dismiss

Wells Fargo and U.S. Bank move to dismiss the TAC on three grounds.  First, Wells Fargo and U.S. Bank contend Plaintiffs have not alleged they can tender the full amount due and owing on the underlying debt.  Second, Wells Fargo and U.S. Bank assert Plaintiffs do not have standing to challenge the validity of the nonjudicial foreclosure.  Third, Wells Fargo and U.S. Bank argue Plaintiffs' claims fail to state a claim upon which relief can be granted under Rule 12(b)(6).  The Court first addresses

---

[5] Plaintiffs only filed an opposition to Wells Fargo and U.S. Bank's motion to dismiss, (Doc. No. 50), and did not file an opposition to Fidelity and Default Resolution Network's motion.  As a result, Fidelity and Default Resolution Network filed a notice of non-opposition on June 17, 2013.  (Doc. No. 51).

[6] Pursuant to Civil Local Rule 7.1.f.3.c, the failure to file an opposition or non-opposition in compliance with Civil Local Rule 7.1.e.2, "may constitute a consent to the granting of a motion or other request for ruling by the court."

1    whether the TAC should be dismissed in its entirety for failure to plead tender, and then

2    addresses whether each of Plaintiffs' claims should be dismissed for failure to state a

3    claim upon which relief can be granted because Plaintiffs' lack standing to challenge

4    alleged deficiencies in the Assignment or securitization of Plaintiffs' Loan.

5        **A.    Failure to Plead Tender**

6        As an initial matter, Wells Fargo and U.S. Bank contend the TAC should be

7    dismissed in its entirety for failure to plead tender.  As a general rule, a defaulted

8    borrower who seeks to set aside a trustee's sale is required to do equity before a court

9    will disturb the trustee's sale.  *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112, 134 Cal.

10   Rptr. 3d 622 (Cal. Ct. App. 2011).  Thus, where a foreclosure sale has already occurred, a

11   plaintiff seeking to reverse the foreclosure sale must allege tender, or the ability to pay

12   the entire underlying debt.  *See Carrasco v. HSBC Bank USA, N.A.*, No. 11cv2711, 2012

13   WL 685523, at *4 (N.D. Cal. Mar. 2, 2012); *Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d

14   575, 205 Cal. Rptr. 15 (Cal. Ct. App. 1984).  The tender rule is an equitable doctrine that

15   prevents a court from uselessly setting aside a foreclosure sale on a technical ground

16   when the borrower making the challenge has not established the ability to purchase the

17   property.  *See Pantoja v. Countrywide Home Loans, Inc*., 640 F. Supp. 2d 1177, 1184

18   (N.D. Cal. 2009).

19       Conversely, where a notice of trustee's sale has been recorded, but the subject

20   property has not yet been sold, California courts disagree as to whether the tender rule

21   applies.  *See Rodriguez v. Bank of Am.*, No. C 11–3839–PSG, 2011 WL 5864108, at *3

22   (N.D. Cal. Nov. 22, 2011) ("There is some division in the district courts, however, as to

23   whether the 'tender rule' precludes a claimant from seeking to prevent a pending

24   nonjudicial foreclosure, as opposed to attempting to 'unwind' a foreclosure that has taken

25   place.").  Although some courts have found that the tender rule applies regardless of

26   whether the sale has actually taken place, *Alcaraz v. Wachovia Mortg.*, *FSB*, 592 F. Supp.

27   2d 1296, 1304 (E.D. Cal. 2009) (applying the tender rule where foreclosure sale is

28   pending), other courts have refused to apply the tender rule where the sale has not yet

occurred, *Hague v. Wells Fargo Bank, N.A.*, No. C11–02366 TEH, 2011 WL 6055759, at *5 (N.D. Cal. Dec. 6, 2011) ("Tender is not required in this case, as the foreclosure at issue has not yet occurred.").  The Ninth Circuit has not yet addressed this precise issue.

Here, because the trustee's sale has not yet occurred, the Court agrees with those courts that have found the tender requirement inapplicable.  *See, e.g., Silva–Pearson v. BAC Home Loans Servicing, LP*, No. 11–01491, 2011 U.S. Dist. LEXIS 71639, 2011 WL 2633406 (N.D. Cal. July 5, 2011); *Dimock v. Emerald Prop.*, 81 Cal. App. 4th 868, 876–78, 97 Cal. Rptr. 2d 255 (Cal. Ct. App. 2000).  Therefore, even though Wells Fargo and U.S. Bank present ample argument that the rules governing tender "are strict and are strictly applied," each of the cases cited by Wells Fargo and U.S. Bank can be easily distinguished, or involved a foreclosure sale that had already occurred.  *Gaffney v. Downey Sav. & Loan Assn.*, 200 Cal. App. 3d 1154, 1163, 246 Cal. Rptr. 421 (Cal. Ct. App. 1988) (analyzing the tender rule with regard to a claim for partial performance); *Arnold's Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578-79 (Cal. Ct. App. 1984) (property already sold at trustee's sale); *United States Cold Storage v. Great Western Sav. & Loan Assn.*, 165 Cal. App. 3d 1214, 1222 (Cal. Ct. App. 1985) (same); *F.P.B.I. Rehab 01 v. E&G Inv., Ltd.*, 207 Cal. App. 3d 1018, 1021 (Cal. Ct. App. 1989) (same); *Karlsen v. Am. Savings & Loan Assoc.*, 15 Cal. App. 3d 112, 121 (Cal. Ct. App. 1971) (same); *MCA, Inc. v. Universal Diversified Enters. Corp.*, 27 Cal. App. 3d 170, 177 (Cal. Ct. App. 1972); *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (Cal. Ct. App. 2003). Accordingly, Wells Fargo and U.S. Bank's motion to dismiss the TAC based on failure to plead tender is DENIED.

## B.    Failure to State a Claim Under Rule 12(b)(6)

Second, Wells Fargo and U.S. Bank contend the TAC should be dismissed because each claim fails to state a cause of action for which relief can be granted.  Each cause of action—declaratory relief, violation of the UCL, intentional misrepresentation, fraudulent concealment, and cancellation of trust instruments—are based on Plaintiffs' allegations that: (1) the Assignment is void due to alleged robo-signing; (2) Wells Fargo and U.S.

Bank have no legal, equitable, or pecuniary interest in the Note or DOT because the Loan was improperly securitized in violation of the Pooling Service Agreement ("PSA"); and (3) Wells Fargo and U.S. Bank violated California Civil Code § 2923.5 by failing to attach a Declaration of Due Diligence to the Notice of Default.  Wells Fargo and U.S. Bank argue each claim necessarily fails because Plaintiffs lack standing to challenge the Assignment and securitization of the Loan via the PSA, and the applicable requirements of § 2923.5 were satisfied.

The Court addresses Wells Fargo and U.S. Bank's arguments for dismissal within the context of Plaintiffs' claims for: (1) intentional misrepresentation and fraudulent concealment; (2) violation of the UCL; (3) cancellation of trust instruments; and (4) declaratory relief.

### 1.   Intentional Misrepresentation and Fraudulent Concealment

Plaintiffs' third and fourth causes of action allege intentional misrepresentation and fraudulent concealment.  (TAC ¶¶ 142-55.)  Each claim alleges that Wells Fargo and U.S. Bank misrepresented that they had a lawful and legitimate right to foreclose upon and sell the Property, that Wells Fargo and U.S. Bank made these alleged misrepresentations in order to induce Plaintiffs to surrender the Property without challenge, that Wells Fargo and U.S. Bank had a duty to disclose the truth of these alleged misrepresentations, and that Wells Fargo and U.S. Bank concealed these facts to Plaintiffs' detriment.  (*Id.*) Plaintiffs also allege that Wells Fargo and U.S. Bank did not have a lawful and legitimate right to foreclose upon the Property because Wells Fargo failed to assign or transfer the Note to Wachovia, and therefore, U.S. Bank (Wachovia's successor in interest) had no legal right to demand payment under the Note.

As stated above, Plaintiffs base both of these claims on allegations that: (1) the Assignment is void due to "robo-signing;" (2) Wells Fargo and U.S. Bank violated the express terms of the PSA governing the securitization process; and (3) the Notice of Default failed to comply with the requirements of California Civil Code § 2923.5.  Wells Fargo and U.S. Bank move to dismiss these claims on the basis that Plaintiffs lack

standing to challenge the Assignment or securitization of the Loan, and that the Notice of Default complied with the requirements of § 2923.5 effective at the time the Notice of Default was recorded.  Wells Fargo and U.S. Bank also contend dismissal is appropriate because Plaintiffs' allegations once again fail to satisfy the heightened pleading requirements of Rule 9(b).

Under California law, "[t]he elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' " *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474, 66 Cal. Rptr. 2d 512 (Cal. Ct. App. 1997).  Similarly, to establish a cause of action for fraudulent concealment, a plaintiff must plead and prove five elements: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage.  *Mktg. West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13, 7 Cal. Rptr. 2d 859 (Cal. Ct. App. 1992).

### a.   Challenge to the Assignment of the Deed of Trust Based on Allegations of Robo-Signing

First, Plaintiffs allege that Wells Fargo and U.S. Bank attempted to cover-up the failure to properly assign, transfer, or grant Plaintiffs' Note and DOT to U.S. Bank (as successor in interest to Wachovia) by purportedly executing and recording a fabricated Assignment.  (TAC ¶ 43.)  Plaintiffs allege the Assignment was fabricated, and therefore void, because the Assignment was signed by Kathleen Everson ("Everson"), as "Vice President Loan Documentation" at Wells Fargo, even though Everson does not hold this title.  (*Id*. at ¶ 45.)  As a result, because the notary would not have notarized the Assignment with Everson's improper title listed on the document, Plaintiffs allege Everson was never in the presence of the notary, and thus Everson served as a "robo-

signer" in executing the Assignment.[7]  (*Id.* at ¶¶ 44-54.)  Plaintiffs attached Everson's LINKEDIN.com profile and the Fiscal Times Financial Advisor profile in support, both of which state that Everson is employed by Wells Fargo as a performance analyst or investment professional, not as the Vice President of Loan Documentation at Wells Fargo.  (*Id.* at ¶¶ 50-51, Exs. E-F.)  Plaintiffs also offer the National Mortgage Settlement Agreement as proof that Wells Fargo and U.S. Bank "have been committing misrepresentation and fraudulent concealment," including, but not limited to, acts of robo-signing.  (*Id.* at ¶ 97.)  Plaintiffs, however, do not dispute that Everson is an employee of Wells Fargo.

Although Plaintiffs make a valiant effort to bolster their robo-signing allegations with Everson's LINKEDIN.com profile, Everson's profile from the Fiscal Times, and the National Mortgage Settlement Agreement, all miss the mark.  Plaintiffs' allegations do not demonstrate that Everson was not authorized in her regular course of duties at Wells Fargo to execute Assignments of Deeds of Trust on behalf of Wells Fargo, nor do Plaintiffs allege that Wells Fargo did not ratify Everson's conduct (as Wells Fargo and not Everson is a named defendant in the instant case).  More importantly, however, Plaintiffs' robo-signing allegations fail because Plaintiffs lack standing to challenge the alleged fraudulent transfers because they were not parties to the Assignment, nor were they the intended receipts of the Assignment.  *See In re MERS Litigation*, No. CV 10-1547-PHX-JAT, 2012 WL 932625, at *3 (D. Ariz. March 20, 2012) (holding that allegations of robo-signing failed to state a claim because plaintiff lacked standing to challenge assignment).  Countless courts have concurred in this result, finding that where a plaintiff alleges that a document is void due to robo-signing, yet does not contest the validity of the underlying debt, and is not a party to the assignment, the plaintiff does not have standing to contest the alleged fraudulent transfer.  *See, e.g., Kuc v. Bank of Am.*, NA, No. CV 12-08024-PCT-FJM, 2012 WL 1268126, at *2 (D. Ariz. Apr. 16, 2012)

---

[7] Plaintiff allege a "robo-signer" is an individual who simply signs thousands of documents without any legal authority to do so.  (*Id.* at ¶ 49.)

("[P]laintiff, as a third-party borrower, does not have standing to challenge the validity of any allegedly 'robosigned' recorded assignments."); *Javaheri v. JPMorgan Chase Bank N.A.*, No. 2:10-cv-08185-ODW (FFMx), 2012 WL 3426278, at *6 (C.D. Cal. Aug. 13, 2012) (accepting allegations of robo-signing as true, but holding that plaintiff lacked standing to challenge substitution of trustee agreement).

Therefore, because Plaintiffs were not parties to the Assignment, do not contest that they are currently delinquent on the underlying debt obligation, and do not allege that they have been making payments towards this obligation (or to whom), the Court finds Plaintiffs could not have been injured by any alleged robo-signing.  Moreover, to the extent that the Assignment was in fact robo-signed, it would be voidable, not void, at the injured party's option.  Here, the injured party would be U.S. Bank, not Plaintiffs.  *See Bateman v. Countrywide Home Loans*, No. 12-00033 SOM/BMK, 2012 WL 5593228, at *4 (D. Haw. Nov. 14, 2012) ("The reason debtors generally lack standing to challenge assignments of their loan documents is that they have no interest in those assignments, and the arguments they make do not go to whether the assignments are *void ab initio*, but instead to whether the various assignments are voidable.  Debtors lack standing to challenge voidable assignments; only the parties to the assignments may seek to avoid such assignments.") (citing Williston on Contracts § 74:50 (4th ed.)).  Accordingly, even assuming the truth of Plaintiffs' allegations, and that Plaintiffs' robo-signing allegations are sufficiently pled, they fail to state a claim.[8]

**b.    Standing to Invalidate the Assignment or Contest Ownership of the Note Based on Defendants' Failure to Comply with the Polling Service Agreement ("PSA")**

---

[8] *See, e.g., Neal v. Bank of America, N.A.*, No. CV 12-08104-PCT-FJM, 2012 WL 3638762, at *4 (D. Ariz. Aug. 24, 2012) (rejecting Plaintiff's argument that the assignment of the deed of trust and the substitution of trustee are forgeries, were robosigned, and are therefore invalid under state statute because "Plaintiff, who is not a party to either the assignment or the substitution of trustee ... does not have standing to challenge the validity of these documents"); *Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-08185-ODW, 2012 WL 3426278, at *6 (C.D. Cal. Aug. 13, 2012) (holding that "[w]ile the allegation of robo-signing may be true, . . . [the plaintiff] lacks standing to seek relief under such an allegation," noting that "District Courts in numerous states agree").

Second, Plaintiffs contend Wells Fargo and U.S. Bank have no "legal, equitable, or pecuniary interest in the Note and Deed of Trust" because the Loan was improperly securitized in violation of the PSA.  (TAC ¶¶ 28-29.)  Plaintiffs allege that shortly after the origination of the Loan, Wells Fargo sold the Loan to another entity or entities in an attempt to securitize the DOT into the Wells Fargo Mortgage Backed Security Series 2004-M Trust ("Wells Fargo Trust").  (TAC ¶¶ 28-29.)  Plaintiffs further allege that in order for the DOT to become part of the Wells Fargo Trust, the entities involved had to adhere to various agreements and laws, including the Wells Fargo Trust Agreement ("Trust Agreement").  (*Id.* at ¶ 29.)  Therefore, because the entities involved failed to adhere to the requirements of the Trust Agreement and the PSA, Plaintiffs allege that the securitization of the Loan failed, and that Wells Fargo and U.S. Bank are merely third-party strangers to the underlying debt obligation.  (*Id.* at ¶ 29.)

Plaintiffs base these allegations on: (1) a title report of the Property and analysis of County records; (2) direct written and oral communication with Defendants; (3) publically available securitization documents and practices; and (4) the Assignment, which was purportedly signed by Everson.  (*Id.* at ¶ 31.)  Plaintiffs also allege that they conducted a Securitization Audit of Plaintiffs' chain of title and Wachovia's PSA, and as a result, determined that Plaintiffs' Note and DOT were not properly conveyed into the Wells Fargo Trust on or before July 29, 2004, the closing date listed in the Trust Agreement.  (*Id.* at ¶ 34.)  Plaintiffs did not attach any of the above noted documentation to the TAC, nor did Plaintiffs provide any further detail as to the specific "written and oral communication with Defendants" that could support their allegations as required under Rule 9(b).

To the extent Plaintiffs challenge the validity of the securitization of the Loan because Wells Fargo and U.S. Bank failed to comply with the terms of the PSA or the Trust Agreement, Plaintiffs are not investors of the Loan, nor are Plaintiffs parties to the PSA or Trust Agreement.  Therefore, as many courts have already held, Plaintiffs lack standing to challenge the validity of the securitization of the Loan.  *Bascos v. Fed. Home*

*Loan Mortg. Corp.*, No. CV 11–3968–JFW (JCx), 2011 WL 3157063, at *4 (C.D. Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."); *Luis v. Orcutt Town Water Co.*, 204 Cal. App. 2d 433, 439, 22 Cal. Rptr. 389 (Cal. Ct. App. 1962) (stating that under California law, a plaintiff lacks standing to challenge a contract if he is not a party to the contract, or if the principal contract "was not made expressly for the benefit of the plaintiff"); *In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (finding that where debtors asked court to declare mortgage assignment invalid based upon breach of PSA, a contract to which debtors were not a party nor third-party beneficiaries, debtors lacked standing to object to any breaches of the terms of the PSA).

Furthermore, although Plaintiffs contend they have standing to challenge the validity of the Assignment because they were parties to the DOT with the original lender (Wells Fargo), this argument also fails. (Doc. No. 49 at 11-12.) Plaintiffs were not parties to the PSA or the Trust Agreement (the agreements/contracts at issue here), nor do Plaintiffs allege that Wells Fargo and U.S. Bank fraudulently "assigned the Deed of Trust to themselves in order to collect on a mortgage that they had no interest in." *McLaughlin v. Wells Fargo Bank, N.A.*, SA CV 12-1114-DOC, 2013 WL 1164432, at *6 (C.D. Cal. Mar. 19, 2013). Instead, Plaintiffs allege the Assignment was not valid because it failed to comply with the PSA. *See, e.g., Soberanis v. Mortgage Elec. Registration Sys., Inc.*, 13-CV-1296-H KSC, 2013 WL 4046458, at *4 (S.D. Cal. Aug. 8, 2013) ("As unrelated third parties to the allegedly failed securitization and any other alleged transfers of the beneficial interest under the subject loan and deed of trust, Plaintiffs lack standing to enforce any agreements related to such transactions."); *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 511-13, 156 Cal. Rptr. 3d 912 (Cal. Ct. App. 2013) ("[E]ven if any subsequent transfers of the promissory note were invalid, [the borrower] is not the victim of such invalid transfers because her obligations under the note remained

unchanged.").  As stated above, these exact arguments have been dismissed by countless other courts in this circuit.  Accordingly, Plaintiffs' contentions that the Assignment is void due to a failure in the securitization process fails.

### c.    Failure to Comply With California Civil Code § 2923.5

Third, Plaintiffs allege that the Notice of Default failed to comply with the requirements of California Civil Code § 2923.5 because a declaration asserting compliance with § 2923.5 was not attached to the Notice of Default as required by law. (TAC ¶ 35.)  At the time the Notice of Default was recorded (August 9, 2011), Section 2923.5(a)(2) provided, "A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Section 2923.5(b) further provided, "A notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h)."

Here, the Notice of Default, which was attached to the TAC as Exhibit C, included the following language in the last paragraph:

> The mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(c) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code § 2923.5.

(TAC, Ex. C.)  Although Plaintiffs do not contest that the above language appeared in the Notice of Default, Plaintiffs seemingly argue that Wells Fargo and U.S. Bank were required to do more in order to satisfy the requirements of § 2923.5.  This however is contrary to the clear language of § 2923.5 effective at the time the Notice of Default was recorded.  At the time the Notice of Default was recorded, § 2923.5 only required Defendants to include a declaration stating that the Defendants had contacted or attempted to contact the Plaintiffs with due diligence.  A detailed list explaining how Defendants had attempted to contact Plaintiffs was not required.  Therefore, in light of

the declaration of due diligence contained in the Notice of Default, and because no reason to question its accuracy exists, Plaintiffs cannot state a cause of action for violation of § 2923.5.

### d.   Failure to Plead the Fraud-Based Claims With Specificity under Rule 9(b)

Finally, as set forth in the Court's prior orders, claims alleging intentional misrepresentation and fraudulent concealment must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("Rule 9(b)'s particularity requirement applies to state-law causes of action.").  Here, however, absent allegations that the DOT is void due to allegations of robo-signing (which has already been rejected by the Court), or that Wells Fargo and U.S. Bank have no legal, equitable, or pecuniary interest in the Loan due to improper securitization (which has also already been rejected by the Court), Plaintiffs have not alleged with sufficient particularity any fraudulent or misleading acts or practices by Wells Fargo and U.S. Bank that could support their claims for intentional misrepresentation and fraudulent concealment.

Therefore, because Plaintiffs lack standing to challenge the Assignment or securitization of the Loan, and have once again failed to plead their fraud-based claims with the required specificity, the Court finds further amendment would be futile and DISMISSES the third and fourth causes of action for intentional misrepresentation and fraudulent concealment without leave to amend.  *See Klamath–Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (stating that futile amendments should not be permitted); *In re Silicon Graphics Inc. Sec. Litig*., 183 F.3d 970, 991 (9th Cir.1999) (denying leave to amend because defects in pleadings could not be cured by amendment); *Luce v. Dalton*, 166 F.R.D. 457, 461, *aff'd*, 167 F.R.D. 88 (S.D. Cal. 1996) ("Any amendment by Plaintiff to add these causes of action to his complaint would be futile as there exists no set of facts under which Plaintiff's claims under these theories of liability can stand.").

//

### 2.    Violation of California's Unfair Competition Law ("UCL")

Plaintiffs' second cause of action alleges unfair competition in violation of the UCL.  (TAC ¶¶ 111-41.)  California Business and Professions Code Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Because the statute is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999).  Plaintiffs allege Wells Fargo and U.S. Bank violated all three subparts of the UCL.  (TAC ¶ 112.)  Wells Fargo and U.S. Bank move to dismiss this cause of action on the basis that Plaintiffs fail to allege any unlawful, unfair, or fraudulent business practices, and nonetheless, Plaintiffs lack standing to bring a claim under the UCL.

In support of their claim, Plaintiffs allege that Wells Fargo and U.S. Bank: (1) failed to disclose the principal for which documents were being executed and recorded in violation of California Civil Code § 1095, (*Id*. at ¶ 116); (2) violated 12 U.S.C. § 1692, (*Id*. at ¶ 117); (3) violated California Penal Code § 532(f)(a)(4), (*Id*. at ¶ 118); (4) demanded and accepted payments from Plaintiffs for nonexistent debts, (*Id*. at ¶ 119); (5) reported payments as late to credit bureaus without the legal right or authority to do so, (*Id*. at ¶ 120); (6) acted as the beneficiary without the legal right to do so, (*Id*. at ¶ 121); (7) facilitated, aided, and abetted unlawful enforcement of Plaintiffs' Note/DOT and the collection of payments under the Note, (*Id*. at ¶ 122-23); and (8) improperly transferred the Note to U.S. Bank, (*Id*. at ¶ 124).  Plaintiffs allege they have standing to assert these claims because: (1) a cloud has been placed upon the title of their Property, (*Id*. at ¶ 138); (2) they have been paying the wrong party for an indeterminate amount of time, (*Id*. at ¶ 141); and (3) their credit and credit score have been damaged, (*Id*.).

Once again, the Court finds Plaintiffs' allegations fail to sufficiently allege unlawful, unfair, or fraudulent conduct on behalf of Wells Fargo or U.S. Bank, and as a

result, Plaintiffs lack standing to bring a claim under the UCL.  With respect to the "unlawful" prong, Plaintiffs rely on California Civil Code § 1095, 12 U.S.C. § 1692 ("FDCPA"), and California Penal Code § 532(f)(a)(4).  However, the Court finds each of these statutory claims fail to state a viable claim.  For example, California Civil Code § 1095 only applies to "attorneys-in-fact," and some courts have recognized that the beneficial interest in a deed of trust is not an estate in property as defined under § 1095.  *See Coburn v. Bank of N.Y. Mellon*, N.A., 2011 WL 1103470, *3, 2011 U.S. Dist. LEXIS 29654, *8 (E.D. Cal. Mar. 21, 2011).  Thus, because Plaintiffs do not allege that an "attorney-in-fact" was involved in the matter, and more importantly, did not provide any opposition to Wells Fargo and U.S. Bank's arguments concerning § 1095 (besides repeating the same allegations present in the TAC), the Court finds Plaintiffs have failed to allege a violation of § 1095.  Plaintiffs' allegations premised on a violation of the FDCPA also fails because this claims is based on the incorrect notion that Wells Fargo and U.S. Bank do not have a lawful right to foreclose on the Property or collect money owed pursuant to the Loan.  However, for the reasons stated above, the Court finds these arguments are without merit because Plaintiffs lack standing to challenge the Assignment or securitization of the Loan.  Finally, although Plaintiffs assert a violation of California Penal Code § 532(f)(a)(4), Penal Code § 532(f)(a)(4) does not exist, nor do Plaintiffs provide specific factual allegations as to how this statute was allegedly violated.  Accordingly, Plaintiffs' claims under the "unlawful" prong are DISMISSED without leave to amend.

With respect to the "unfair" and "fraudulent" prongs, Plaintiffs contend Wells Fargo and U.S. Bank do not have a valid interest in the Note or DOT, and thus cannot foreclose on the Property.  However, for the reasons stated above, the Court finds Plaintiffs lack standing to advance these contentions.  Therefore, because Plaintiffs have not provided any further basis to hold Wells Fargo and U.S. Bank liable under the UCL, the Court DISMISSES Plaintiffs' claims under the "unfair" and "fraudulent" prongs without leave to amend.  Accordingly, because the TAC does not sufficiently allege

unlawful, unfair, or fraudulent conduct, and further amendment would be futile, the Court DISMISSES Plaintiffs' second cause of action for violation of the UCL without leave to amend.

### 3.    Cancellation of Trust Instruments

Plaintiffs' fifth cause of action seeks "cancellation of instruments." (TAC ¶¶ 156-62.) Plaintiffs seek to cancel the DOT and the Assignment, both of which were recorded in the San Diego County Recorders Office. (*Id*. at ¶ 161.) Under California Civil Code § 3412, a "written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. Civ. Code § 3412. Plaintiffs allege that because there is a reasonable apprehension regarding the validity or ownership of the Note and DOT, the equitable remedy of cancellation is appropriate.

Once again, Plaintiffs' contentions are based on the same faulty premise that Wells Fargo and U.S. Bank do not have a lawful right in the Note or DOT, or that Plaintiffs even have standing to challenge the Assignment or securitization of the Loan. Therefore, as stated above, because each of Plaintiffs' claims are based on defects in the Assignment or securitization of the Loan, neither of which Plaintiffs have standing to challenge, Plaintiffs' claim for cancellation of instruments must fail. Accordingly, Plaintiffs' fifth cause of action for cancellation of instruments is DISMISSED without leave to amend.

### 4.    Declaratory Relief

Finally, Plaintiffs seek declaratory relief in the form of a judicial determination of the rights and duties of the parties with respect to the Property. Specifically, Plaintiffs want the Court to determine whether the Assignment and DOT are invalid or void, and if not, whether the Assignment and DOT should be rescinded or canceled. (TAC ¶¶ 98-109; Doc. No. 49 at 15:12-18.) Wells Fargo and U.S. Bank move to dismiss this cause of action on the basis that Plaintiffs cannot establish the existence of an actual and present

controversy, and in any event, the relief requested is duplicative of Plaintiffs' other causes action.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Declaratory relief should be denied if it will "neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Wash.*, 759 F.2d 1353, 1356-57 (9th Cir. 1985). A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action. *Manown v. Cal–Western Reconveyance Corp.*, No. 09cv1101 JM (JMA), 2009 WL 2406335, at *6 (S.D. Cal. Aug. 4, 2009).

Here, the Court finds Plaintiffs' request for declaratory relief is entirely commensurate with Plaintiffs' claims for violation of the UCL, intentional misrepresentation, fraudulent concealment, and cancellation of trust instruments. Therefore, because a claim for declaratory relief is merely procedural, and does not by itself state a claim, Plaintiffs' first cause of action for declaratory relief necessarily fails. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S. Ct. 461 (1937); *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1111 n.2 (9th Cir. 1999); *Realty Experts Inc. v. RE Realty Experts, Inc*., No. 11-cv-1546 JLS (CAB), 2012 WL 699512, at *2 (S.D. Cal. Mar. 1, 2012). Accordingly, because each cause of action has been dismissed without leave to amend, Plaintiffs' first cause of action seeking declaratory relief is DISMISSED without leave to amend.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Wells Fargo and U.S. Bank's motion to dismiss the TAC with prejudice, (Doc. No. 44), and GRANTS Fidelity and Default Resolution Network's motion to dismiss the TAC with prejudice, (Doc. No. 47). Moreover, because Plaintiffs were put on notice that failure to seek leave of court prior to

adding new claims or parties would result in an order to show cause as to why sanctions should not issue, and Plaintiffs did not seek leave of Court prior to adding Fidelity and Default Resolution Network as named defendants in the TAC, the Court hereby orders the following.  Plaintiffs are ordered to show cause, in writing, as to why the Court should not grant Fidelity and Default Resolution Network their reasonable fees and expenses incurred in opposing the TAC.  Plaintiffs must file their opposition to the order to show cause no later than **September 25, 2013.**  Fidelity and Default Resolution Network may file a response no later than **October 2, 2013.**  Neither document may exceed ten (10) pages in length.  The motion hearing on the Order to Show Cause is hereby set for **October 31, 2013 at 2:00 p.m.** in Courtroom 3B.  The Clerk of Court is instructed to enter judgment and close the case.

IT IS SO ORDERED.

DATED:  September 11, 2013

_____

Hon. Anthony J. Battaglia
U.S. District Judge